# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC VIOLA,                              :        No. 3:06cv1930
                    Plaintiff,           :
                                         :        (Judge Munley)
                                         :
          v.                             :
                                         :
BOROUGH OF THROOP,                       :
TOM LUKASEWICZ,,                         :
STANLEY LUKOWSKI,                        :
NEIL FURIOSI, and                        :
TONY CHAZAN,                             :
                    Defendants           :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendants' motion for summary judgment (Doc. 22).

Having been fully briefed, the matter is ripe for disposition.

## Background[1]

Plaintiff Eric Viola has been employed as a police office by the Village of

Throop, Pennsylvania since 2000. (Defendants' Statement of Material Facts as to

which no genuine issue remains to be tried (Hereinafter "Defendants' Statement")

(Doc. 23) at ¶ 6). As a full-time police officer, plaintiff was a member of the Throop

Police Officers Association and employed pursuant to a collective bargaining

agreement. (Id. at ¶¶ 7-8).

Plaintiff testified on May 18, 2006 at a hearing regarding a petition for a

---

[1]The court cites to the defendants' statement of material facts for those facts which
are not disputed.  If the parties dispute facts, the decision will note that.

protection from abuse ("PFA") filed by his ex-girlfriend in Lackawanna, Pennsylvania county court.  (Id. at ¶ 9).  The judge at that hearing did not issue the PFA. (Plaintiff's Statement of Facts in Dispute (hereinafter "Plaintiff's Statement") (Doc. 28) at ¶ 9).  Though they did not testify, Defendants Police Chief Neil Furiosi, Borough Councilman Tony Chrzan and Mayor Stanley Lukowski were present at the hearing.  (Id.).

The Borough suspended plaintiff with pay on June 9, 2006.  (Defendants' Statement at ¶ 10).  The Borough informed plaintiff of his suspension by letter.  (See Defendants' Statement, Plaintiff's Deposition (Exh. 1), Exh. 7).[2]  As reasons for the suspension, the letter reported that during the week of May 29, 2006, plaintiff had been observed "going into [his] residence several times during [his] shift, and remaining [there] for approximately one-half of [his] entire shift."  (Id.).  Plaintiff, the letter claimed, had also twice failed to respond to calls from the Communications Center.  (Id.).  During this period of suspension, the Defendant Borough deducted sick time from plaintiff's account.  (Defendant's Statement at ¶ 14).  After plaintiff complained that this deduction was improper, the Borough restored his sick time. (Id. at ¶ 15).

On June 15, 2006, the Defendant Borough again wrote the plaintiff, informing him of a hearing scheduled for July 5, 2006.  (Dep. Exh. 8).  The letter noted that

---

[2]Defendants have included plaintiff's deposition as Exhibit 1 of their statement of facts.  Included in this deposition are individual exhibits, which are also numbered.  Any further citation from the exhibits to this deposition will be noted as "Dep. Exh. (No.)."

plaintiff had been subjected to a disciplinary action which had a potential effect on his pay and employment with the Borough.  (Id.).  At the hearing, the letter stated, plaintiff would "be given an opportunity to respond to these allegations before Throop Borough Council and offer any evidence" plaintiff possessed which would allow him to reduce or eliminate the disciplinary action he faced.  (Id.).

Plaintiff notified the Borough on June 23, 2006 that he had retained counsel, who would represent him at the hearing.  (Defendants' Statement at ¶ 17; Dep. Exh. 10).  That same day, plaintiff filed a grievance against the Borough challenging his paid suspension.  (Id. at ¶ 18).  In his grievance, plaintiff alleged that the Department had suspended him without just cause and in violation of his due process rights. (Dep. Exh. 24).  Plaintiff complained that he had been suspended without an explanation of the evidence against him or an opportunity to present his version of events.  (Id.).  He sought reinstatement, removal of documents related to the suspension from his personnel file, and restoration of the benefits he had lost.  (Id.). Plaintiff thus filed the documents necessary to state a grievance about his June 9, 2006 suspension.  (Defendants' statement at ¶ 20).

A hearing on plaintiff's suspension took place on July 11, 2006.  (Id. at ¶ 21). Counsel represented plaintiff at the hearing.  (Id. at ¶ 22).  Plaintiff testified at this hearing.  (Id. at ¶ 23).  A witness, Charles Reed, testified for the plaintiff at this hearing.  (Id. at ¶ 24).  This witness testified at the hearing and in his deposition that others had committed the same offenses–leaving their assigned posts during

3

shifts–for which the plaintiff was punished.  (Deposition of Charles Reed, Exh. 5 to Defendants' Statement (hereinafter "Reed Dep.") at 6-7).  One officer took time away from his shift to start vehicles belonging to his busing company.  (Id. at 7).  Reed could not recall officers–except for plaintiff–being punished by the Borough for such behavior.  (Id. at 9-10).  He testified that he was "not aware" of whether others in the police force were disciplined for such behavior.  (Id. at 15).  The Borough suspended the plaintiff for ten days without pay after this hearing.  (Defendants' Statement at ¶ 25).

Plaintiff filed a complaint in the Court of Common Pleas of Lackawanna County, Pennsylvania on August 31, 2006.  (Doc. 1-2).  Defendants removed the case to this court on September 28, 2006.  (Doc. 1).  One week later, they filed a motion to dismiss the complaint. (Doc. 2).  After the court considered briefs and oral argument, we denied the motion to dismiss in part and granted it in part.  (Doc. 14).  Plaintiff then filed an amended complaint.  (Doc. 15).  Count I of the amended complaint, brought pursuant to 42 U.S.C. § 1983, alleges that defendants violated plaintiff's due process rights by suspending him with pay indefinitely and without pay for ten days without giving him an opportunity to be heard.  (Id.).  Count II, also brought pursuant to Section 1983, contends that the defendants retaliated against the plaintiff by suspending him without pay for ten days after he filed a grievance over his initial suspension.  (Id.).  Count III raises a claim for violation of plaintiff's right to be free from governmental interference with family relationships, a state

4

claim for invasion of privacy, and a claim of publicity given to a private life.  (Id. at 6-9).  Plaintiff claims that these wrongs arose from the PFA action dismissed against him.  Count IV is a failure to train claim against the defendants, who allegedly received no training about providing due process before suspending an officer.

After discovery closed, defendants filed a motion for summary judgment. (Doc. 22).  The parties then briefed the issue, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We  have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

5

there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the

facts in the light most favorable to the party opposing the motion. International Raw

Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The

burden is on the moving party to demonstrate that the evidence is such that a

reasonable jury could not return a verdict for the non-moving party. Anderson, 477

U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit

under the governing law. Id.  Where the non-moving party will bear the burden of

proof at trial, the party moving for summary judgment may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible evidence,

would be insufficient to carry the non-movant's burden of proof at trial. Celotex v.

Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the

burden shifts to the nonmoving party, who must go beyond its pleadings, and

designate specific facts by the use of affidavits, depositions, admissions, or answers

to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendants have moved for summary judgment on each of plaintiff's claims.

We will address them in turn.

**a.  Due Process/Count I**

Defendants argue that the court should grant summary judgment on plaintiff's

6

procedural due process claim in Count I.  A party asserting a procedural due process claim must show "that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).  Defendants argue that plaintiff cannot establish that the Borough deprived him of a protected property interest.  Even if he could, they insist, plaintiff received all of the process he was due.

### i. Protected Interest

As a threshold matter, the court must determine whether plaintiff's suspension without pay infringed on a protected property interest.  "In evaluating a procedural due process claim, we first determine 'whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property.'" Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007) (quoting Alvin, 227 F.3d at 116).  Such property interests do not have an independent source in the federal constitution, but "are 'created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Id. (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).  Thus, "to have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate

entitlement to such continued employment." <u>Elmore v. Cleary</u>, 399 F.3d 279, 282 (3d

Cir. 2005).

Plaintiff's employment was covered by a collective bargaining agreement that

prevent his discharge without cause.  As such, he had a protected property interest

in continued employment.  <u>See, e.g.</u>, <u>Cleveland Board of Educ. v. Loudermill</u>, 470

U.S. 532, 538-39 (1985). Defendants contend that the United States Supreme Court

has found that an employee's protected property interest is not implicated by a

suspension without pay.  The case they cite for this proposition, however, declines to

reach that question because the defendants conceded that their suspension of the

plaintiff implicated a property interest.  <u>See</u> <u>Gilbert v. Homar</u>, 520 U.S. 924, 929

(1997) (finding that "we have not had occasion to decide whether the protections of

the Due Process Clause extend to discipline of tenured public employees short of

termination.  Petitioners, however, do not contest this preliminary point, and so

without deciding it we will, like the District Court, 'assum[e] that the suspension

infringed a protected property interest.'").[3]  In any case, we take plaintiff's complaint

_____

[3]Defendants are not entirely wrong to say that the court found a public employee
has only limited procedural protections when faced with suspension.  In discussing how
much process was due a public employee accused of a felony who was suspended without
pay, the court concluded that "in determining what process is due, account must be taken
of 'the length' and '*finality* of the deprivation." <u>Gilbert</u>, 520 U.S. at 932 (quoting <u>Logan v.
Zimmerman Brush Co.</u>, 455 U.S. 422, 434 (1982)) (emphasis in original).  In the case of a
suspension, an employee who receives a "prompt postsuspension hearing" and has not
been deprived of substantial income or fringe benefits has not been deprived of his rights.
<u>Id.</u>  Thus, from the court's perspective, very little process was due such an employee.  In
any case, the court reminds the defendants of the Supreme Court's admonition that "the
Due Process Clause provides that certain substantive rights–life, liberty, and
property–cannot be deprived except pursuant to constitutionally adequate procedures.

to be about not only his suspension with pay, but also his suspension without pay.

The court finds that a suspension, even with pay, could implicate a plaintiff's status

within the department on issue such as seniority, vacation and retirement status, and

thus implicates a protected property interest.  The question here is what process

plaintiff was due before the suspensions.

### ii.  Process Due

"[O]nce it is determined that the Due Process Clause applies, 'the question

remains what process is due.'" Loudermill, 470 U.S. at 541 (quoting Morrisey v.

Brewer, 408 U.S. 471, 481 (1972)).  Courts have found that due process "is not a

technical conception with a fixed content unrelated to time, place and

circumstances.'" Matthews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Cafeteria

Workers v. McElroy, 367 U.S. 886, 895 (1961)).  Instead, courts are to inquire into

the circumstances of the deprivation to determine what process is required.  Id.

Accordingly, "'[consideration] of what procedures due process may require under

any given set of circumstances must begin with a determination of the precise nature

of the government function involved as well as of the private interest that has been

---

The categories of substance and procedure are distinct.  Were the rule otherwise, the Clause would be reduced to mere tautology.  'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty.  The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee.  While the legislture may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).  In other words, this question requires the court to make separate inquiries into the existence of a property interest and the process required to protect that interest.  A lack of established process does not mean the lack of a property interest.

affected by governmental action.'" <u>Wolff v. McDaniel</u>, 418 U.S. 539, 560 (1974)

(quoting <u>McElroy</u>, 367 U.S. at 895).  Three factors generally guide this

determination: "First, the private interest that will be affected by the official action;

second, the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any of additional or substitute procedural

safeguards; and finally, the Government's interest, including the function involved

and the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail." <u>Matthews</u>, 424 U.S. at 335.  The Third Circuit Court of

appeals has concluded that "[a]t a minimum, due process requires notice and a

hearing." <u>Wilson v. MVM, Inc.</u>, 475 F.3d 166, 178 (3d Cir. 2007). Still, "when that

notice and hearing must be provided and how intensive the hearing must be is a

determination that depends on the balancing of [the] three interests" articulated in

<u>Matthews</u>.  <u>Id.</u>

Two deprivations occurred here: plaintiff's suspension with pay prior to his

formal hearing and his 10-day suspension without pay following that hearing.[4]  The

_____

[4]Plaintiff appears to argue that the deprivation that plaintiff experienced came when
he was initially suspended with pay, and that the suspension without pay that followed was
merely a continuation of the original suspension.  (<u>See</u> Plaintiff's Brief in Opposition to
Defendants' Motion for Summary Judgment (Doc. 27) at 9).  The evidence makes clear,
however, that plaintiff received his initial paid suspension, was given a hearing, and then
received an unpaid suspension.  If the defendants had determined that plaintiff should not
be suspended without pay at this hearing, plaintiff could still potentially have a due process
claim about his original suspension, which had neither notice nor an opportunity to be
heard.  These two suspensions were different events, and the court finds that the proper
analysis begins by determining what process was due in each situation, and whether the
defendants provided that process.

court will address each suspension in turn.  The first suspension occurred before

plaintiff was provided any procedure and, according to the defendants, was in place

to provide plaintiff with an opportunity to address the allegations made against him

before any suspension without pay or other serious disciplinary action took place.  A

letter notified plaintiff that he had been suspended with pay because he allegedly

took improper breaks during his shifts.  The Supreme Court has concluded that there

are circumstances where no pre-deprivation hearing is required.  See, e.g., Federal

Deposit Insurance Corp. v Mallen, 486 U.S. 230, 240 (1988).  "Due process does not

require pre-deprivation notice and hearing where there is an adequate scheme to

compensate the property owner for the deprivation."  Reichly v. Pa. Dept. of

Agriculture, 427 F.3d 236, 247 (3d Cir. 2005).  Indeed, the Supreme Court has found

that a plaintiff charged with a felony was not entitled to a pre-deprivation hearing

before being suspended without pay, because "[s]o long as the suspended

employee receives a sufficiently prompt postsuspension hearing, the lost income is

relatively insubstantial (compared with termination) and fringe benefits such as

health and life insurance are often not affected at all."  Gilbert, 520 U.S. at 932.

Here, plaintiff received a prompt hearing, did not lose any income, and faced little if

any loss in fringe benefits.  Accordingly, a pre-deprivation hearing was unnecessary

in this case.  The private interest at risk was minuscule, since plaintiff continued to

be paid while awaiting his hearing.  The lack of any real financial impact on the

plaintiff before his actual hearing mitigates the chance that the suspension was

unjustified, which could be proved in a hearing that came shortly after the

suspension with pay.  Finally, the risk of erroneous deprivation was also small; the

purpose of the suspension with pay was to allow the plaintiff to prepare for a hearing

at which a much larger interest was at stake: suspension without pay.

The suspension without pay occurred after plaintiff received all of the process

he was due.  The United States Supreme Court has found that "the pre-termination

'hearing,' though necessary, need not be elaborate." Loudermill, 470 U.S. at 545.

Put simply, "[t]he essential requirements of due process, and all that respondents

seek or the Court of Appeals required, are notice and an opportunity to respond." Id.

at 546.  Here, the plaintiff received written notice that a hearing would take place

regarding his suspension.  He attended that hearing, enjoyed the assistance of an

attorney and presented evidence on his behalf.  Plaintiff also filed a grievance in

relation to his suspension.  Only after this hearing did plaintiff face an unpaid

suspension.  Clearly, plaintiff had notice and an opportunity to be heard.  We will

therefore grant summary judgment on this point.

Plaintiff contends that he did not receive the process he was due because

defendants did not follow the disciplinary procedures required by department

policies.  He worked six years for the Borough before his suspension, and the

department never informed him that he had failed to follow department standards

and plaintiff never had a deficient performance appraisal.  He had never been

accused of using excessive force in an arrest and never faced an abuse complaint.

The "progressive discipline" policy followed by the Borough for police officers was also not observed in this case: rather than a series of sterner warnings, plaintiff was suspended for what appeared to be his first offense.

This argument is unavailing and immaterial to plaintiff's procedural due process claim.  The question in this matter is not whether defendants' discipline was proper and according to police department rules, but whether plaintiff received the process he was due under the Constitution before deprived of his right to work for ten days.  Plaintiff cannot dispute that he was notified of the charges against him, attended a hearing with his attorney at which those charges were address, and presented evidence to contenst those charge.  Such was the process due plaintiff under the Fourteenth Amendment, and he received it.  Other complaints about police disciplinary methods are not material to plaintiff's due process claim.

**b.  Retaliation**

Defendants contend that they should be granted summary judgment on plaintiff's First Amendment retaliation claim because plaintiff has presented no evidence that he spoke on a matter of public concern.  In order to make out a First Amendment retaliation case, the plaintiff must present evidence to show that he (1) engaged in a protected activity; (2) that the government took action against the plaintiff at the time of or after the protected action; (3) that the protected activity caused the government to take the action that harmed the plaintiff.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).  In such cases, "[t]he threshold

requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation." Eichenlaub v. Township of Indiana, 385 F.3d 274, 282 (3d Cir. 2004). If the plaintiff is a public employee bringing a complaint against his or her employer, the protected activity must address a "matter of public concern." Id. A public employee's speech addresses a matter of public concern when "it can 'be fairly considered as relating to any matter of political, social or other concern to the community.'" Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001) (quoting Green v. Phila. Hous. Auth., 105 F.3d 882, 885-86 (3d Cir. 1997)). A court is to "focus on the content, form, and context of the activity in question." Id. Such speech qualifies for protection "if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'" Id. (quoting Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993)). If "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick v. Myers, 461 U.S. 138, 147 (1983).

The court finds that plaintiff did not speak on a matter of public concern in filing a grievance about his suspension, but instead as a private citizen. This case is not like Feldman v. Philadelphia Housing Authority, where the plaintiff's speech concerned corruption and mismanagement in a city housing agency and the court

14

concluded that "[d]isclosing corruption, fraud, and illegality in a government agency is a matter of significant public concern." Feldman v. Philadelphia Housing Authority, 43 F.3d 823, 829 (3d Cir. 1994).  Here, plaintiff complained he had been unfairly suspended for improperly performing his job.  He did not complain about corruption within the police force, systematic discrimination the basis of race, or any other matter which would raise a general concern about the department's operation.  Instead, he complained about a personnel matter.  Protected speech cannot be found in such circumstances. See, e.g., Connick, 461 U.S. at 147; Sanguini v. Pittsburgh Board of Public Education, 968 F.2d 393, 399 (3d Cir. 1992) (finding that speech is not a matter of public concern when it is "related solely to mundane employment grievances.").  Since "[i]t is for the court, not the jury, to perform the [Supreme Court's] balancing test" on a public employee's speech, the court concludes as a matter of law that plaintiff did not speak on a matter of public concern and therefore cannot prevail on his First Amendment retaliation claim.  Feldman, 43 F.3d at 829.  The court will grant summary judgment to the defendants on that claim as well.[5]

_____

[5]Plaintiff's argument on this claim focuses on whether a reasonable person would have been deterred from speaking as a result of a ten-day suspension after filing a grievance.  Because a jury could conclude that the Borough's reaction to plaintiff's grievance would cause a reasonable person not to speak in the future, plaintiff argues, he should "[get] his day in court for his claim of First Amendment Retaliation." (Plaintiff's Brief at 15).  Whatever a jury could conclude about a reasonable person's reaction to the Borough's suspension, plaintiff did not speak on a matter of public concern.  Since plaintiff did not clear that preliminary hurdle, he cannot claim the protection of the First Amendment in this matter.

**c. Interference with Family Relationships**

Defendants also seek summary judgment on plaintiff's claim that they interfered with a family relationship in violation of his rights under the United States Constitution.  Plaintiff contends that Borough officials attended his Protection from Abuse (PFA) hearing without any legal need to do so, and that they suspended him eight days after attending this hearing.  He alleges that this temporal connection between his suspension and his PFA hearing is evidence by which a jury could conclude that defendants interfered with family relationships.  Defendants argue that plaintiff had no family relationship with which they interfered, and that he has no claim in any case because he did not suffer any permanent loss of income or position.

Plaintiff's claim here appears to be that defendants violated his privacy rights by punishing him because his former girlfriend sought a Protection from Abuse order in county court.[6]  Such suspension may implicate plaintiff's constitutional rights,

_____

[6]To the extent that plaintiff actually attempts to make out a claim for interference with family relationships, he clearly has no evidence on that claim.  Such a claim exists under the law, and "[t]he Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process."  Croft v. Westmoreland County Children and Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997).  Here, however, no evidence indicates that the defendants were involved in any disruption in plaintiff's family life that occurred outside a courtroom, and plaintiff offers no evidence of procedural discrepancies in those court proceedings.  Instead, plaintiff merely offers evidence that he was involved in a PFA proceeding, that his daughter may have been present, and that Borough officials attended that proceeding.  No violation of substantive or procedural due process occurred based on these facts, because plaintiff offers no evidence that defendants disrupted his family relationship in any way.  They simply suspended him without pay.  To the extent that plaintiff has a claim, it appears to be that he was punished

since "it is clear that among the decisions that an individual may make without

unjustified government interference are personal decisions 'relating to marriage,

procreation, contraception, family relationships, and child rearing and education.'"

Zablocki v. Redhail, 434 U.S. 374, 385 (1978) (quoting Carey v. Population Services

International, 431 U.S. 678, 684-85 (1977)).  Due Process prevents the government

from "needlessly, arbitrarily, or capriciously imping[ing] upon" one of these protected

rights.  Cleveland Board of Educ. v. LaFleur, 414 U.S. 632, 640 (1974).  Even if we

were to assume that plaintiff faced discipline because of his ex-girlfriend's attempt to

obtain a PFA and not for the reasons stated by the defendants, that discipline did

not come because of any decision he made about whether to marry, whether to end

a marriage or whether to have children.  Instead, the decision to suspend him

appeared to come because his ex-girlfriend sought to have a court intervene in their

relationship in order to protect her.  As such, plaintiff has not presented any evidence

that defendants invaded his privacy by interfering in his choices about personal or

family relationships.

　　　　This case is not like Littlejohn v. Rose, 768 F.2d 765, 769 (6th Cir. 1985), a

case cited by the plaintiff.   In that case, the Sixth Circuit Court of Appeals

determined that a plaintiff's First Amendment associational rights were violated when

a school district refused to renew her teaching contract after she obtained a divorce.

---

not because of his performance at work, but because his ex-girlfriend sought a PFA.
Plaintiff contends that this punishment–especially since the court refused to issue the
PFA–violated his rights.

The defendant admitted it did not renew plaintiff's teaching contract because she had divorced.  Her teaching reviews were exemplary and the parties agreed that she would normally have been rehired.  The court therefore found that the basis of the defendant's decision to deny plaintiff employment was her intimate relationship, and found that this violated her privacy rights.  Here, plaintiff offers no evidence–other than speculation about the timing of events–that defendants were motivated in their employment decision by plaintiff's PFA case.  Moreover, in Littlejohn the plaintiff's complaint was that defendant punished her for choosing to obtain a divorce, a choice about a private matter protected by the First Amendment.  Here, plaintiff contends that he was punished by the defendants because his ex-girlfriend sought a Protection from Abuse Order against him in a public forum.  That event does not amount to a choice like the one made by the teacher in Littlejohn.

Further, even if the defendants could be seen to have intruded on a private matter, the intrusion was minimal and justified.  Plaintiff did not lose his job.  He was suspended for ten days, but continues to work for the department.  The penalty was therefore not severe.  The needs of the Borough to maintain public respect for and confidence in the police force also justify action against an officer accused of this sort of wrongdoing, even if a court finds the evidence insufficient to act.  A municipality necessarily must be concerned when its law enforcement officers run afoul of the law.  Whatever reasons the court gave for deciding not to issue a PFA order against the defendant, the Borough's interest in maintaining order in the

18

community, discipline in the police force, and respect for law enforcement justifies

the minor discipline imposed on the plaintiff.   The court will therefore grant

defendants summary judgment on this count.

### d.  Failure to Train/Count IV

Defendants also seek summary judgment on Count IV of plaintiff's complaint,

which alleges defendants failed to provide proper training on providing due process

before depriving a party of a protected property interest.   The Supreme Court has

held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must]

identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Board of the

County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403

(1997).  Liability attaches either to an official policy or to a "custom" that constitutes a

"practice . . . so widespread as to have the force of law."  Id. at 404.  Still, "[o]nly

where a municipality's failure to train its employees in a relevant respect evidences a

'deliberate indifference' to the rights of its inhabitants can such a shortcoming be

properly thought of as a city 'policy or custom' that is actionable under § 1983." City

of Canton v. Harris, 489 U.S. 378, 389, (1989).  Further, "[w]hen a plaintiff alleges

that a municipality has not directly inflicted an injury, but has caused an employee to

do so, stringent standards of culpability and causation must be applied to ensure that

the municipality in a § 1983 suit is not held liable solely for the conduct of its

employee." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).   These

strict standards exist because "in enacting § 1983, Congress did not intend to

impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." Brown, 520 U.S. at 399.

Here, as explained above, the plaintiff has not produced any evidence that demonstrates his constitutional rights have been violated.  As such, he has not produced any evidence that indicates that his rights were violated due to a policy or custom of the Borough.  See, e.g., Brown v. Commonwealth of Penn. Dept. of Health Emergency Medical Services Training Institute, 318 F.3d 473, 483 (3d Cir. 2003) (finding that since "[t]here has been no constitutional harm alleged . . . there is no municipal liability under § 1983); Mosca v. Cole, 217 Fed. Appx. 158, 165 (3d Cir. 2007) (holding that "[s]ince Mosca has not established any constitutional violations, his *Monell* claim fails as a matter of course.").  The court will therefore grant the defendants' motion on Count IV.

**e.  Invasion of Privacy/Publicity Given to a Private Life**

Plaintiff also raises state-law claims of invasion of privacy and publicity given to a private life in Count III.  Because the court has granted summary judgment to the defendants on all of plaintiff's federal claims (see below), the court will exercise its discretion and decline to hear any claims brought pursuant to state law.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (finding that if the federal claims in a case are dismissed prior to trial, the state claims should be dismissed as well).

**Conclusion**

The plaintiff has not produced any evidence by which a reasonable juror could conclude that his rights pursuant to federal law have been violated.  The court will therefore grant the defendants' motion for summary judgment.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERIC VIOLA,** | : | **No. 3:06cv1930** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF THROOP,** | : | |
| **TOM LUKASEWICZ,,** | : | |
| **STANLEY LUKOWSKI,** | : | |
| **NEIL FURIOSI, and** | : | |
| **TONY CHAZAN,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

_____**AND NOW**, to wit, this 5th day of August 2008, the defendants' motion for

summary judgment (Doc. 22) is hereby **GRANTED**.  The Clerk of Court is directed to

**CLOSE** the case.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**