IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC VIOLA, | : | No. 3:06cv1930 |
|     Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| BOROUGH OF THROOP, | : | |
| TOM LUKASEWICZ,, | : | |
| STANLEY LUKOWSKI, | : | |
| NEIL FURIOSI, and | : | |
| TONY CHAZAN, | : | |
|     Defendants | : | |

## **MEMORANDUM**

Before the court are the parties' motions for summary judgment in consideration of the Third Circuit Court of Appeals' mandate in this case. Having been fully briefed, the matter is ripe for disposition.

**Background**[1]

Plaintiff Eric Viola has been employed as a police office by the Village of Throop, Pennsylvania since 2000. (Defendants' Statement of Material Facts as to which no genuine issue remains to be tried (Hereinafter "Defendants' Statement") (Doc. 23) at ¶ 6). As a full-time police officer, plaintiff was a member of the Throop Police Officers Association and employed pursuant to a collective bargaining agreement. (Id. at ¶¶ 7-8).

---

[1] The court cites to the defendants' statement of material facts for those facts which are not disputed. If the parties dispute facts, the decision will note that.

Plaintiff testified on May 18, 2006 at a hearing regarding a petition for a protection from abuse ("PFA") filed by his ex-girlfriend in Lackawanna, Pennsylvania county court. (Id. at ¶ 9). The judge at that hearing did not issue the PFA. (Plaintiff's Statement of Facts in Dispute (hereinafter "Plaintiff's Statement") (Doc. 28) at ¶ 9). Though they did not testify, Defendants Police Chief Neil Furiosi, Borough Councilman Tony Chrzan and Mayor Stanley Lukowski were present at the hearing. (Id.).

The Borough suspended plaintiff with pay on June 9, 2006. (Defendants' Statement at ¶ 10). The Borough informed plaintiff of his suspension by letter. (See Defendants' Statement, Plaintiff's Deposition (Exh. 1), Exh. 7).[2] As reasons for the suspension, the letter reported that during the week of May 29, 2006, plaintiff had been observed "going into [his] residence several times during [his] shift, and remaining [there] for approximately one-half of [his] entire shift." (Id.). Plaintiff, the letter claimed, had also twice failed to respond to calls from the Communications Center. (Id.). During this period of suspension, the Defendant Borough deducted sick time from plaintiff's account. (Defendant's Statement at ¶ 14). After plaintiff complained that this deduction was improper, the Borough restored his sick time. (Id. at ¶ 15).

On June 15, 2006, the Defendant Borough again wrote the plaintiff, informing

---

[2]Defendants have included plaintiff's deposition as Exhibit 1 of their statement of facts. Included in this deposition are individual exhibits, which are also numbered. Any further citation from the exhibits to this deposition will be noted as "Dep. Exh. (No.)."

2

him of a hearing scheduled for July 5, 2006. (Dep. Exh. 8). The letter noted that plaintiff had been subjected to a disciplinary action which had a potential effect on his pay and employment with the Borough. (Id.). At the hearing, the letter stated, plaintiff would "be given an opportunity to respond to these allegations before Throop Borough Council and offer any evidence" plaintiff possessed which would allow him to reduce or eliminate the disciplinary action he faced. (Id.).

A hearing on plaintiff's suspension took place on July 11, 2006. (Defendants' Statement at ¶ 21). Counsel represented plaintiff at the hearing. (Id. at ¶ 22). Plaintiff testified at this hearing. (Id. at ¶ 23). A witness, Charles Reed, testified for the plaintiff at this hearing. (Id. at ¶ 24). This witness testified at the hearing and in his deposition that others had committed the same offenses–leaving their assigned posts during shifts–for which the plaintiff was punished. (Deposition of Charles Reed, Exh. 5 to Defendants' Statement (hereinafter "Reed Dep.") at 6-7). One officer took time away from his shift to start vehicles belonging to his busing company. (Id. at 7). Reed could not recall officers–except for plaintiff–being punished by the Borough for such behavior. (Id. at 9-10). He testified that he was "not aware" of whether others in the police force were disciplined for such behavior. (Id. at 15). The Borough suspended the plaintiff for ten days without pay after this hearing. (Defendants' Statement at ¶ 25).

Plaintiff filed a complaint in the Court of Common Pleas of Lackawanna County, Pennsylvania on August 31, 2006. (Doc. 1-2). Defendants removed the

case to this court on September 28, 2006. (Doc. 1). One week later, they filed a motion to dismiss the complaint. (Doc. 2). The court denied the motion to dismiss in part and granted it in part. (Doc. 14). Plaintiff then filed an amended complaint. (Doc. 15). Count I of the amended complaint, brought pursuant to 42 U.S.C. § 1983, alleged that defendants violated plaintiff's due process rights by suspending him with pay indefinitely and without pay for ten days without giving him an opportunity to be heard. (Id.). Count II, also brought pursuant to Section 1983, contended that the defendants retaliated against the plaintiff by suspending him without pay for ten days after he filed a grievance over his initial suspension. (Id.). Count III raised a claim for violation of plaintiff's right to be free from governmental interference with family relationships, a state claim for invasion of privacy, and a claim of publicity given to a private life. (Id. at 6-9). Plaintiff claimed that these wrongs arose from the PFA action dismissed against him. Count IV was a failure to train claim against the defendants, who allegedly received no training about providing due process before suspending an officer.

After discovery closed, defendants filed a motion for summary judgment. (Doc. 22). On August 5, 2008, the court granted the defendants' motion and closed the case. (See Doc. 33). Plaintiff filed a motion for reconsideration, and when the court denied this motion appealed. (Docs. 34, 35, 40, 41). On July 22, 2010, the Third Circuit Court of Appeals affirmed this court's opinion in part and reversed that opinion in part. (Doc. 43). The Appeals court upheld summary judgment on

4

plaintiff's retaliation claim but reversed this court's opinion on the due process claim. The Appeals Court remanded the case to this court with instructions to reconsider the case in light of Dee v. Borough of Dunmore, 549 F.3d 225 (3d Cir. 2009), which concluded that a protected property interest could exist when a public-employee plaintiff was suspended, and not terminated. The court also directed that this court's "inquiry on remand . . . include an analysis of the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976) in the context of the property interest recognized in Dee." Such an "inquiry," the court stressed, "requires a heightened government interest where the government provides process only after deprivation." (Doc. 44 at 4).

After receiving this opinion, the court ordered the parties to file briefs addressing the issues raised by the Third Circuit. Defendants filed a brief as directed. Plaintiff filed a motion for summary judgment, a statement of material facts and a brief in support of that motion. The parties then briefed the plaintiff's motion, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the

6

burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

The court of appeals directed this court to "reconsider [the due process] claim in light of our analysis in Dee. The court's inquiry on remand will include an analysis of the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976) in the context of the property interest recognized in Dee. That inquiry requires a heightened government interest where the government provides process only after the deprivation." (Opinion (Doc. 44-2) at 4). In Dee, plaintiff had worked for eighteen years for the Defendant Borough of Dunmore's fire department. 549 F.3d at 227. In June 2005, the Borough suspended him without notice after concluding that plaintiff had not completed two training requirements. Id. Eight days after announcing this suspension, the Borough Council held a hearing, concluding that plaintiff was current in all of his training and should not be suspended. Id. Plaintiff brought a procedural due process claim based on this suspension. Id. He appealed when the district court determined that his suspension did not implicate a constitutionally protected property interest. Id. Analyzing state law and the provisions of plaintiff's collective bargaining agreement, the Court of Appeals concluded that plaintiff had a "constitutionally protected property interest in not being suspended without just cause." Id. at 232.

7

Once the court made this determination, it evaluated whether Dee received the level of process to which he was "constitutionally due." Id. The court employed factors developed the by the United States Supreme Court in Matthews v. Eldridge, 424 U.S. 319 (1976): "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Matthews, 424 U.S. at 335. Dee had received neither notice nor an opportunity to be heard before his suspension, and found that "when an individual is not provided with any form of pre-deprivation process, as in this case, the risk of an erroneous deprivation of his constitutionally protected interest . . . is heightened considerably." Dee, 549 F.3d at 232. The court found that in a situation where an important right is at stake and no pre-deprivation process takes place, "[o]nly in 'extraordinary situations where some valid governmental interest is at stake' is it permissible to postpone the hearing until after the deprivation has already occurred." Id. at 233. The district court had not reached this issue, and the Court of Appeals remanded the case to the district court to determine whether the facts of the case amounted to one of those "extraordinary situations" where no pre-deprivation process was necessary. Id.

This court earlier determined that plaintiff's interest in not being suspended

8

with pay from his job constituted a protected property interest. The Court of Appeals did not disturb that finding. Thus, the Due Process Clause applies to this case, and the question is whether plaintiff received adequate process before his suspension with pay. "[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541 (1985) (quoting Morrisey v. Brewer, 408 U.S. 471, 481 (1972)). Courts have found that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Matthews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)). Instead, courts are to inquire into the circumstances of the deprivation to determine what process is required. Id. Accordingly, "'[consideration] of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'" Wolff v. McDaniel, 418 U.S. 539, 560 (1974) (quoting McElroy, 367 U.S. at 895).

Three factors are to be considered in this analysis: "the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424

9

U.S. at 335. Of particular importance in this case, as explained by the Court of Appeals, is the question of whether an emergency situation existed that justified defendant's actions in suspending plaintiff without a hearing.

As to the first factor, the private interest affected by the official action, the Supreme Court has found that "while our opinions have recognized the severity of depriving someone of the means of his livelihood . . . they have also emphasized that in determining what process is due, account must be taken of "the *length*" and "*finality* of the deprivation." Gilbert v. Homar, 520 U.S. 924, 932 (1997). Addressing a case where an employee faced a temporary, unpaid suspension, the court concluded that "[s]o long as the suspended employee receives a sufficiently prompt postsuspension hearing, the lost income is relatively insubstantial (compared with termination), and fringe benefits such as health and life insurance are often not affected at all." Id. In this case, the evidence indicates that plaintiff was suspended with pay. He at first had to use his sick time during the suspension, but the evidence demonstrates that the Borough restored that sick time. The plaintiff therefore faced even less of a loss to his private interest that the plaintiff in Gilbert; his suspension was with pay, and any loss of benefits in the form of sick leave that he faced was rectified. As such the court finds that only a minimal private interest was affected by plaintiff's suspension with pay. See, e.g., Espinosa v. County of Union, 212 Fed. Appx. 146, 155 (3d Cir. 2007) (concluding that "a temporary suspension without pay generally does not require a predeprivation hearing").

10

As to the second factor, as in Dee the Borough provided plaintiff with notice but not an opportunity to be heard before suspending him. As the court noted in Dee, "when an individual is not provided with any form of pre-deprivation process, as in this case, the risk of an erroneous deprivation of his constitutionally protected interest . . . is heightened considerably." Dee, 549 F.3d at 232. Deprivation without process, the court emphasized, should be restricted to those "'extraordinary situations where some valid government interest is at stake.'" Id. at 233 (quoting Roth, 408 U.S. at 570 n. 7). In Dee, a factual dispute existed over the defendant's stated reasons for suspending the plaintiff without process. Id. The defendant contended that it suspended plaintiff because he lacked proper certification to serve as a firefighter. Id. Plaintiff pointed to evidence he said established that the defendant's stated reasons for suspending him were pretextual, and insisted that defendant acted out of concern for its public reputation. Id. The court remanded the case to the district court to consider the Mathews factors, noting that this disputed issue of fact would "greatly impact the analysis of the factors to be examined." Id.

Defendants must, therefore, establish the presence of an "extraordinary situation" that would justify suspending plaintiff without providing him with an opportunity to be heard or this factor will weigh heavily in plaintiff's favor. Defendants allege that plaintiff demonstrated a "continual and pernicious neglect of his duties," which "placed his fellow officers at risk and undermined the department's ability to conduct its mission to protect the citizens of the Borough of Throop."

11

(Defendants' Supplement Brief at 6). The Borough's interest in ensuring that citizens had reliable and trustworthy police protection, defendants insist, justifies their immediate suspension of plaintiff. Moreover, plaintiff's interest in not being suspended with pay is minimal, and the government's interest surely outweighs it. Plaintiff responds that no emergency situation could have existed, since the Borough investigated plaintiff for twelve days before suspending him. If an immediate suspension were necessary to protect the public, the Borough would have acted earlier.

The court agrees with the defendants that this represents one of those extraordinary situations where an immediate suspension was necessary to protect the public interest. This case has to do with the integrity and reliability of the Borough police force and therefore implicates an important governmental interest. In approving the suspension of a bank officer indicted for fraud before a hearing, the Supreme Court in Federal Deposit Ins. Corp. v. Mallen, found that "[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." Id. at 240. In Homar v. Gilbert, 89 F.3d 1009 (3d Cir. 1996), the Third Circuit Court of Appeals concluded that this "compelling governmental interest" test had been satisfied when a university suspended a police officer arrested on drug charges without a pre-deprivation hearing. Homar, 89 F.3d at 1015. The Court concluded that "[t]he

university has a substantial interest in maintaining public confidence in the ESU police force" and plaintiff's arrest made clear "that the university's concerns were not baseless or unwarranted." Id. "In cases where public safety is implicated," the court found, "'not even an informal hearing . . . must precede a deprivation.'" Id. (quoting Caine v. Hardy, 943 F.2d 1406, 1412 (5th Cir. 1991)).[3] This case similarly has to do with the trustworthiness and reliability of public institutions and public officers.

Police officers are necessary to insure public health and safety, and they must attend to those duties in order to inspire public confidence in the police force and, more important, to provide the protection that is the purpose of the police. Once the Borough confirmed that plaintiff had been neglecting his duties, the nature of the situation became clear and public safety demanded a suspension.[4] This case is different from Dee, where there was a disputed issue of fact about the reason for

---

[3]The Court nonetheless found that the district court erred in granting defendants summary judgment. Plaintiff had been suspended without pay, and the court concluded that "The Supreme Court's decision in Loudermill strongly suggests that suspension without pay must be preceded by notice and an opportunity to be heard in all instances." Homar, 89 F.3d at 1015.

[4]Plaintiff's argument that the Borough's failure to suspend plaintiff immediately when accusations of misconduct appeared is evidence that no emergency existed is unavailing; plaintiff would apparently find an emergency situation existed only if the Borough felt compelled to suspend plaintiff even before investigating the allegations against him. To suspend without an investigation, however, would increase the risk of erroneous deprivation substantially. Since the reason for confining suspension without a hearing to extraordinary circumstances is partly to limit the risk of an erroneous deprivation, plaintiff's position would actually encourage an employer to suspend employees at the first hint of improper behavior, thus increasing the risk of erroneous deprivation.

13

plaintiff's suspension. The defendant here had a well-founded reason to believe that plaintiff was endangering the public by not attending to his duties as a police officer; indeed, it is undisputed that plaintiff failed to report for duty and left his duty station without permission. Suspending plaintiff pending an investigation was necessary so the Borough could be assured that a police officer assigned to duty actually performed the duties assigned. The court finds that this is one of those "extraordinary situations" where prompt government action was necessary to protect the public safety. In addition, the court finds that the risk of erroneous suspension in this matter was slight. Defendants informed plaintiff at the time of his paid suspension of the grounds for the suspension. Plaintiff did not then, nor has he ever disputed the fact that he did not fulfill his assigned duties. This factor therefore weighs in favor of the defendants.

Finally, the court must consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. Defendants argue that the Borough has a strong interest in insuring that proper police protection and public safety exist, and that such action justifies a suspension with notice but without an opportunity to be heard. Defendants do not address, however, the additional fiscal and administrative burdens that would apply if the Borough were forced to convene a full hearing before suspending the plaintiff with pay. Plaintiff does not address these factors either, insisting instead that no

14

emergency situation occurred and thus the suspension without a hearing was unjustified no matter the weight of the other Mathews factors. The court finds that the Borough has a substantial interest in promoting public safety through a reliable police force. The parties have provided no estimate of the cost or burden of additional procedure before suspension, which the court concludes would have been some opportunity to contest the charges. This additional procedure would have limited the substantial government interest in promoting public safety through a reliable police force, though not to an intolerable degree. This factor, therefore, is neutral in the analysis.

In the end, the court, using the factors articulated in Mathews, finds that summary judgment is appropriate for the defendant on plaintiff's procedural due process claim related to his suspension with pay. The court concludes that the private interest at stake–suspension with pay–was minor. Plaintiff did not lose any pay, and the sick time he originally used to cover the suspension was restored. The court also finds that the extraordinary nature of this situation justified a prompt suspension before plaintiff received an opportunity to be heard. Plaintiff was a police officer, and his admitted neglect of his duties placed other officers and the public at risk. The Borough needed to be assured that police officers assigned to duty would actually perform their duties. The plaintiff's suspension with pay, coupled with the Borough's investigation and letter informing him of the charges against him, limited the risk of erroneous deprivation. Finally, police protection is itself an important

15

government interest that requires close and careful supervision. Though adding a hearing before paid suspension would not necessarily burden the Borough substantially, this factor when added to plaintiff's minor interest does not outweigh the Borough's need to act quickly.

**Plaintiff's Motion**

The plaintiff filed a motion for summary judgment on his procedural due process claim after the Court of Appeals remanded this case. As the court has concluded that summary judgment is appropriate for the defendant on this claim, the court will deny the plaintiff's motion

**Conclusion**

For the reasons stated above, the court will therefore grant the defendants' motion for summary judgment and deny the plaintiff's motion. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC VIOLA, | : | No. 3:06cv1930 |
|     Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| BOROUGH OF THROOP, | : | |
| TOM LUKASEWICZ,, | : | |
| STANLEY LUKOWSKI, | : | |
| NEIL FURIOSI, and | : | |
| TONY CHAZAN, | : | |
|     Defendants | : | |

## ORDER

**AND NOW**, to wit, this 30th day of November 2010, the defendants' motion for summary judgment (Doc. 22) is hereby **GRANTED**. The plaintiff's motion for summary judgment (Doc. 47) is hereby **DENIED**. The Clerk of Court is directed to **CLOSE** the case.

                                                          **BY THE COURT:**

                                                          **s/ James M. Munley**
                                                          **JUDGE JAMES M. MUNLEY**
                                                           **United States District Court**